IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DEMETRIUS D. DILLARD, SR., )
)
       Plaintiff, )
)
v. ) 1:17CV112
)
DOLGEN CORP. LLC., et al., )
)
       Defendants. )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court on Motions to Compel Arbitration and Dismiss or, in the alternative, to Stay Proceedings Pending Arbitration [Doc. #8, #12], filed by Defendants Shannon Richardson and Dolgencorp, LLC ("Dollar General").[1]

In this case, Plaintiff Demetrius Dillard Sr., proceeding *pro se*, brings claims alleging discrimination, harassment, and retaliation in violation of the Age Discrimination in Employment Act of 1967, as amended (ADEA), arising out of his prior employment at Dollar General. In the present Motions, Defendants contend that Plaintiff's claims are subject to arbitration pursuant to the terms of the Dollar General Employee Arbitration Agreement ("Arbitration Agreement") that exists between Plaintiff and Defendant Dollar General.

For the reasons that follow, the Court will recommend that Defendants' Motions to Compel Arbitration be granted.

---

[1] Defendant Dolgencorp's instant Motion asserts that Plaintiff improperly identified Defendant as Dolgen Corp LLC, and that the corporate entity is Dolgencorp, LLC. (See Def.'s Mot. to Compel Arbitration [Doc. #12] at 1). This Memorandum Opinion will refer to the corporate entity as "Dollar General" and collectively with Defendant Shannon Richardson as "Defendants."

I.  FACTS, CLAIMS, AND PROCEDURAL HISTORY

In the Complaint, Plaintiff alleges that he was hired on October 12, 2015 to work at a Dollar General Store located at 3109 Yanceyville Street in Greensboro, NC, but that he waited six weeks to be scheduled to work and then requested transfer to another location.  On December 9, 2015, he was transferred to the nearby Dollar General Store located at 4017 Yanceyville Street and began working approximately 20 hours per week.  He alleges that beginning February 1, 2016, a new manager began harassing him and making discriminating statements about his age.  Plaintiff alleges that he complained to the store manager, Defendant Richardson, but it appeared that nothing was done.  Plaintiff alleges that after he continued to complain, his schedule was reduced in retaliation and he was ultimately forced to resign.

In connection with the instant Motions to Compel Arbitration, Defendants provided the Declaration of Lynne Pool, Supervisor of Dollar General's Human Resources Shared Services Department [Doc. #9-1].  Ms. Pool avers that Plaintiff accepted the Dollar General Employee Arbitration Agreement on October 12, 2015, as part of Plaintiff's new hire documents. (Id.)  Ms. Pool explains that Dollar General uses an "Express Hiring system" that requires candidates to log in to the system using a unique identification number and password. (Id.)  Ms. Pool further notes that once logged into the system, candidates are presented with new hire documents, including the Arbitration Agreement, and candidates have the option to electronically agree to the Arbitration Agreement or opt out of the Agreement. (Id.)  Candidates are also advised that a failure to take action within 30 days is construed as the candidate's acceptance of the Arbitration Agreement. (Id.)  Ms. Pool states that company records indicate that Plaintiff used his unique login information to access the Arbitration

Agreement on October 12, 2015, that he agreed to the Arbitration Agreement, and that he affixed his electronic signature thereto. (Id.) Ms. Pool further indicates that Plaintiff took no further action within the 30 day period provided to opt out of the Arbitration Agreement. (Id.)

Consistent with those statements, attached to Ms. Pool's declaration is a document entitled "Dollar General Employee Arbitration Agreement," dated October 12, 2015, which reflects Plaintiff's name, the last four digits of Plaintiff's social security number, and Plaintiff's initials certifying the contents of the document. (See Decl. of L. Pool, Ex. A [Doc. #9-2].) That document provides, in part:

> Dollar General … has a process for resolving employment related legal disputes with employees that involves binding arbitration. This Dollar General Employee Arbitration Agreement ("Agreement") describes that process and constitutes a mutually binding agreement between you and Dollar General, subject to opt out rights described at the end of this Agreement.
>
> You agree that, with the exception of certain excluded claims described below, any legal claims or disputes that you may have against Dollar General, its parent and subsidiary corporations, employees, officers and directors arising out of your employment with Dollar General or termination of employment with Dollar General ("Covered Claim" or "Covered Claims") will be addressed in the manner described in this Agreement. You also understand that any Covered Claims that Dollar General may have against you related to your employment will be addressed in the manner described in this Agreement.
> . . . .
> The procedures in this Agreement will be the exclusive means of resolving Covered Claims relating to or arising out of your employment or termination of employment with Dollar General, whether brought by you or Dollar General. This includes, but is not limited to, claims alleging violations of wage and hour laws, state and federal laws prohibiting discrimination, harassment and retaliation, claims for defamation or violation of confidentiality obligations, claims for wrongful termination, tort claims, and claims alleging violation of any other state or federal laws, except claims that are prohibited by law from being decided in arbitration, and those claims specifically excluded in the paragraph below.

3

(Id.)² The Arbitration Agreement also contains a provision stating that arbitration "will be conducted in accordance with the terms set forth in [the] Agreement and the Employment Arbitration Rules of AAA (the "Rules"), except as superseded by the terms of this Agreement." (Id.)

Plaintiff does not dispute that he agreed to the terms of the Arbitration Agreement. Plaintiff also does not contend that his ADEA claims fall outside the scope of the Arbitration Agreement.³ Rather, Plaintiff contends that the Arbitration Agreement "should be voided" because he did not begin working for Defendant in October 2015 when he signed the Arbitration Agreement. (Pl.'s Response [Doc. #15] at 2.)⁴ Plaintiff alleges that the Defendants misled him as to the Dollar General location where he would work, that Defendants instead transferred Plaintiff to a store other than the one to which he applied, that Plaintiff did not begin working for two months after he signed the Arbitration Agreement, and that these issues should render the Dollar General Employee Arbitration Agreement invalid. (Id.)

---

² The Arbitration Agreement excludes from its coverage "claims for unemployment insurance benefits, workers' compensation benefits … whistleblower claims under the Sarbanes-Oxley Act, and claims for benefits under the Employee Retirement Income Security Act. Covered claims also do not include claims pending in court as of the date this Agreement is signed by you, and claims concerning the scope or enforceability of this Agreement."

³ See also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) (concluding that Congress did not intend to preclude arbitration of ADEA claims).

⁴ Plaintiff also notes in his Response that this Court previously dismissed an earlier Complaint filed by Plaintiff in 1:16CV545, without prejudice to Plaintiff refiling after he exhausted his administrative remedies with the EEOC. Plaintiff points out that Defendants did not object to the Court permitting Plaintiff to refile his claim. (See Pl.'s Response [Doc. #15] at 2.) However, in that earlier case, the Recommendation was entered before Defendants were served. Thus, Defendants were not required to file objections to the Court's Recommendation, and their failure to do so did not function as a waiver of their right to move for arbitration in the present action. Moreover, the requirement that Plaintiff exhaust his administrative remedies is not inconsistent with Defendants' request to submit the dispute to arbitration, and the Arbitration Agreement itself requires exhaustion of administrative remedies by filing with the EEOC and obtaining a notice of right to sue before a demand for arbitration is made.

II.     DISCUSSION

In the present motion, Defendants move to compel arbitration pursuant to the Federal Arbitration Act ("FAA"). Pursuant to the FAA, written arbitration agreements in a contract involving commerce are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court; instead it mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985). "However, a party cannot be required to arbitrate a dispute that it has not agreed to submit to arbitration." Fastener Corp. of Am. v. Asheboro Elastics Corp., No. 1:12-CV-1296, 2013 WL 3227665, at *2 (M.D.N.C. June 25, 2013) (citing AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986)).

The Court will compel arbitration under the FAA if "(1) the parties have entered into a valid agreement to arbitrate, and (ii) the dispute falls within the scope of the arbitration agreement." Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc., 807 F.3d 553, 563 (4th 2015) (citing Muriithi v. Shuttle Express, Inc., 712 F.3d 173, 179 (4th Cir. 2013)). The Court applies state law principles governing contract formation in determining whether the parties agreed to arbitrate. Hightower v. GMRI, Inc., 272 F.3d 239, 242 (4th Cir. 2001). "A valid contract requires offer, acceptance, consideration, and no defenses to formation." Collie v. Wehr Dissolution Corp., 345 F. Supp. 2d 555, 558 (M.D.N.C. 2004) (internal quotation omitted). It is essential to formation that there be mutual assent of both parties to the terms of an agreement. Id.

Here, Plaintiff does not dispute the existence of the Arbitration Agreement. Plaintiff affirmatively opted into the terms of the Arbitration Agreement in October 2015, thus agreeing to arbitrate "[c]overed [c]laims relating to or arising out of [his] employment or termination of employment with Dollar General." The fact that Plaintiff was transferred to a different store location and did not begin to physically work until December 2015 does not alter the parties' agreement to arbitrate. The terms of the Arbitration Agreement also permitted Plaintiff to opt out. The Arbitration Agreement made clear that Plaintiff otherwise would be bound by the terms of the Arbitration Agreement if he did not expressly opt out in the manner prescribed "within 30 days of starting his employment." [Doc. #9-2 at 2.] Plaintiff does not contend that he opted out of the Arbitration Agreement. Instead, the Arbitration Agreement itself reflects that Plaintiff expressly agreed to the Arbitration Agreement and attached his electronic signature. Thus, Plaintiff agreed to the terms of the Arbitration Agreement, whether the Court construes Plaintiff's "start of employment" as his hire date in October 2015 or the date he began physically working in December 2015.

In addition, Dollar General agreed to be bound by the same terms in the Arbitration Agreement. In North Carolina, an exchange of mutual promises to be bound by the terms of an Arbitration Agreement is sufficient consideration for an agreement to arbitrate. Johnson v. Circuit City Stores, 148 F.3d 373, 377 (4th Cir. 1998). The acknowledged Arbitration Agreement clearly satisfies the requisite offer, acceptance, and consideration to form a contract under North Carolina contract law. Thus, there exists between the parties an agreement to arbitrate covered claims.

6

In addition, Plaintiff does not dispute that the claims asserted in this case are within the scope of the Arbitration Agreement. As noted above, the Arbitration Agreement covers any legal claims or disputes against Dollar General and its employees "arising out of your employment with Dollar General or termination of employment with Dollar General," including "claims alleging violations of . . . federal laws prohibiting discrimination, harassment and retaliation." Thus, there is no question that the claims in this case are within the scope of the Arbitration Agreement.[5]

The Court therefore concludes that all of the claims asserted in this case are subject to arbitration pursuant to the Arbitration Agreement, and no matters remain for further adjudication by the Court. The Court will therefore recommend that the Motion to Compel Arbitration be granted, and that this case be administratively closed while the matter proceeds to arbitration, but either party may file a motion to reopen the matter if appropriate at the conclusion of the arbitration, without payment of filing fees.

III.   CONCLUSION

IT IS THEREFORE RECOMMENDED that Defendant's Motion to Compel Arbitration [Doc. #8, #12] be granted, and that this case be administratively closed, but any

---

[5] In his Complaint, Plaintiff also alleges that Defendants violated various company policies. Specifically, Defendant alleges that "Dollar General violated their Ethical Standards, Open Door Policy, Non-Retaliation Policy, Anti-Discrimination and Harassment Policy, and Workplace Violence Policy." (Complaint [Doc. #2] at 3). Plaintiff's Complaint does not make clear, however, what cause of action he asserts based on the alleged violations of company policy. As discussed herein, the ambit of the Arbitration Agreement is broad. To the extent Plaintiff asserts other claims that arise from the employment relationship, those claims fall squarely within the ambit of the Arbitration Agreement and are also subject to arbitration.

party may file a motion to reopen the matter if appropriate at the conclusion of the arbitration, without payment of filing fees.

This, the 9th day of November, 2017.

                                                        /s/ Joi Elizabeth Peake
                                               United States Magistrate Judge